ADONIRAM J. CASS ET AL. v. JOHN O. GUNNISON, ADMIN-
ISTRATOR FOR WILLIS P. HEWITT, IMPLEADED WITH
ALBERT H. STEVENS AND WILLIAM OLIVER.

*Chattel mortgage on lumber pile—Replevin—Identity.*

1. The notes given upon a purchase of goods and the chattel mortgage
on such goods to secure the notes are properly put in evidence in an
action of replevin brought by the vendor for the property.

2. In replevin for goods bought by some of the defendants from plaintiff
to satisfy the purchasers' debt to another defendant with whom they
had gone into partnership, the dealings of the firm in regard to
partnership matters, after the goods were replevied, were immaterial
in the absence of any charge of fraud.

3. Whether a chattel mortgage upon a quantity of lumber is not void for
uncertainty if given before the mortgagers have received the lumber
and acquired title to it, and before the portion designated in the
mortgage has been set apart and identified by the selection, from the
mass, of other lumber claimed by a creditor—Q.

4. The intention of the parties to a chattel mortgage may aid in ascer-
taining the exact description of the property it is to cover and in
applying it thereto ; but it cannot apply the mortgage to property
not known to the parties when the mortgage was made.

5. The question whether the parties to a chattel mortgage knew what it
was to cover, is one for the jury. So, also, is the good faith of a
purchaser of the goods.

6. The issue in replevin is to be determined by the jury upon the facts as
they were at the beginning of the suit.

Error to Mecosta.   (Fuller, J.)   June 11.—Sept. 29.

REPLEVIN.   Defendant Gunnison brings error.   Reversed.

*Mitchel & McGarry* for appellant.   While parol evidence
is admissible to show that a particular article is included
within the general words of a description (*Comins v.
Newton* 10 Allen 518; *Harding v. Coburn* 12 Met. 333;
*Willey v. Snyder* 34 Mich. 60) a mortgage, to be effectual,
must point out the subject matter so that a third person by
its aid, with such inquiries as the instrument itself suggests,
may identify the property covered ; and property not

described or indicated, is not affected : *Winter v. Landphere* 42 Ia. 471; *Smith v. McLean* 24 Ia. 322; *Lawrence v. Evarts* 7 Ohio St. 194; *Richardson v. Alpena L. Co.* 40 Mich. 203; a chattel mortgage not filed is absolutely void as against creditors : *Hubbardston Lumber Co. v. Covert* 35 Mich. 259; *Wallen v. Rossman* 45 Mich. 333; *Putnam v. Reynolds* 44 Mich. 113.

*Glidden & Marsh* and *M. J. Smiley* for appellees. A bona fide purchaser must not only contract but actually pay for the property in question : *Kohl v. Lynn* 34 Mich. 360; *Matson v. Melchor* 42 Mich. 478; *Palmer v. Williams* 24 Mich. 328; *Smith v. Williams* 44 Mich. 241; *Stone v. Welling* 14 Mich. 514, he must have parted with something of value, and not merely given a contract which he could avoid if his title under the deed proved defective : *Blanchard v. Tyler*, 12 Mich. 338; *Warner v. Whitaker* 6 Mich. 133.

SHERWOOD, J. This case was an action of replevin. The writ described the property in litigation. The declaration was in the usual form, and no question arises thereon. The plea was the general issue. The action is brought to recover a quantity of lumber. Defendant Hewitt alone defended. Two trials were had at the circuit. On the first the defendant succeeded, a new trial was granted by the circuit judge, and the second trial resulted in favor of the plaintiffs. After the bill of exceptions was settled Mr. Hewitt died intestate. Defendant Gunnison was appointed his administrator, and he removed the case into this Court for review on writ of error.

The evidence tends to show the following facts, viz.: That in July, 1883, Willis P. Hewitt, who then resided at Muir, Ionia county, formed a co-partnership with Albert H. Stevens and Elmore R. Oliver, who resided at Grand Rapids, under the firm name of Hewitt, Stevens & Co., to operate a mill and carry on the sash, door and blind manufacturing business at Big Rapids. Hewitt owned the mill and manufacturing business, and sold to Stevens & Oliver an undivided one-half interest therein for the sum of $5000, of which they were to pay $3000 in lumber within thirty days, delivered at the mill; $1500 to be secured by their note payable to

Hewitt, and the firm to assume the payment of $1000 of Hewitt's old indebtedness; Hewitt's interest in the partnership being equal to that of both of the other partners. The agreement was reduced to writing, and contained a clause that the title to the property sold to Stevens & Oliver should remain in Hewitt till paid for; that about the 15th of July, 1883, the plaintiffs entered into a contract with Hood, Gale & Co., of Big Rapids, to purchase of that firm about 2,500,-000 feet of lumber, being all of certain kinds then in their yard belonging to Hood, Gale & Co., and at certain prices for each grade, to be paid for in three and six months. The lumber was to be inspected and put on board of the cars, as plaintiff should order it, at any time within three months.

Some few days prior to the 3d of August, 1883, Stevens & Oliver, for the purpose of paying Hewitt the $3000 in lumber on their contract with him, made an agreement with the plaintiffs to purchase of them the lumber for that purpose, to be of such kinds as they, Stevens & Oliver, should order from time to time, the quantity to be determined by the price until the $3000 worth should be delivered; the lumber to be delivered on the cars as they should order, and shipped to the mill-yard of Hewitt, Stevens & Co. It was to be pine lumber from the yard of Hood, Gale & Co. A few days prior to the 3d of August, two car-loads and a few wagon-loads, to the value of $155.97, had been taken to Stevens & Oliver, at Hewitt, Stevens & Co.'s yard, and on that day Stevens & Oliver, in order to secure payment to the plaintiffs for the lumber contracted for as above stated, executed to plaintiff three notes of $1000 each, payable in sixty, seventy-five and ninety days, respectively, accompanied by a chattel mortgage, executed in like manner to plaintiffs, which described the property covered thereby as follows: " All their right, title and interest in and to the planing-mill, sash, door and blind factory, and all machinery of every kind and description belonging or appertaining thereto; and also all the lumber *now on hand at said mill and in transit belonging to said first parties,* being the lumber purchased from said second parties; and also all stock manufactured from

said lumber. It being intended that these presents bargain, sell and mortgage all the interest of said first parties in and to said mill and appurtenances under and by virtue of a *contract of purchase and sale,* which said above-described goods, chattels and property, at the date hereof, are situate in the city of Big Rapids, Mecosta county, Michigan, and are free and clear from all liens, conveyances, incumbrances, and levies, *except the right of Willis P. Hewitt* under said *contract* above mentioned." ·

Hewitt claims that he had no notice of this mortgage, and never heard of it until a long time after he had received the lumber and applied it in payment and satisfaction of his debt; that when he entered into his business relations with Stevens & Oliver he resided at Muir, and they were comparatively strangers to him; that his business interest in the firm was only looked after by its book-keeper, Mr. Finch; and that when he received this lumber he believed it was free from all liens and incumbrances. He further claims that "the lumber was shipped from time to time, as ordered by Oliver & Stevens, up to and including the 23d day of August, at which time the last shipment was made. When Oliver & Stevens wanted a car-load of lumber, the plaintiffs would order it shipped to them from Hood, Gale & Co. Hood, Gale & Co. would bill it to the plaintiffs, and the plaintiffs to Oliver & Stevens. It was delivered on the inspection of Hood, Gale & Co. A portion of the lumber delivered was bought by the plaintiffs of Hood, Gale & Co., after the making of the chattel mortgage. *As fast as the lumber was received it was turned over to Mr. Hewitt by Oliver & Stevens to apply on the $3000 indebtedness which was to be paid in lumber within thirty days, and Hewitt received it and gave Oliver & Stevens credit for the same on that account, except a small amount which was not such lumber as Hewitt was to receive, and that this was used by the firm in making repairs on the buildings." And further, that at the time the mortgage was executed, and for a long time thereafter, Stevens and Oliver were both residents of Grand Rapids; that the mortgage was never filed in the

city of Grand Rapids where the mortgagors resided, but on the 13th day of August, 1883, it was filed with the recorder in the city of Big Rapids, and not until the mortgage was filed did the plaintiffs inform him of or show him the mortgage, and then claimed of him their interest thereunder. Hewitt refused to pay Stevens & Oliver's debts, and claimed that the firm of Hewitt, Stevens & Co. had run behind; that it had not paid the $1000 assumed when the copartnership was formed; neither had Oliver & Stevens paid the note of $1500 given to Hewitt at that time, and that the firm of Hewitt, Stevens & Co. was largely indebted to him; that this was the situation at the time this suit was brought; that the plaintiffs took upon their writ 1037 feet only of the lumber delivered prior to and on the day of the date of the mortgage, worth about nine or ten dollars, and that the balance of the lumber seized was lumber shipped after that date, together with a quantity of lumber purchased by the firm of Hewitt, Stevens & Co. that had no connection with the lumber bought by Oliver & Stevens. The appraisal of the lumber was $1740.37, and this, it was admitted upon the trial, should be taken as the value of the property replevied, and that plaintiffs made demand for same before suit brought, which was refused, and that a copy of the mortgage was filed as above stated. Many other facts above stated do not seem to have been seriously contested.

The two principal questions in the case are: *First,* Did the chattel mortgage take effect upon the lumber in question? *Second,* If it did, was Hewitt a bona fide purchaser for value, so as to enable him to hold the property against the mortgagees?

Upon the case as presented to the jury on the testimony, under the rulings made, and the law given them by the court as applicable to the facts, they have found upon these questions for the plaintiff, and that verdict must stand, if no error was committed by the circuit judge.

Twenty-five errors are assigned upon the record. The first and second relate to the admission in evidence of the notes and mortgage. These were properly admitted. The third,

fourth, fifth, sixth and seventh errors assigned relate to the acts and doings of Hewitt and the firm of Hewitt, Stevens & Co. in regard to their firm matters and business after this suit was commenced and the property replevied. The matters queried after, one and all, in these exceptions were entirely immaterial, and in no way aided the court or jury in solving the real questions in controversy. The parties could deal as they chose with each other; sell out to each other or to other persons as they might deem most for their interest. They might continue the business or close it, or either or all abandon it, as they or either of them saw fit, and it is difficult to see how it could change the legal effect of what had been done, or the defendants' obligation in any way to the plaintiffs; and especially must this view be taken so long as no actual fraud is charged against the defendant. Hewitt.

The testimony offered, and the deduction sought therefrom, and from this course of examination, against the objections urged by counsel for defendants, were calculated to mislead the jury to the prejudice of the defendants, and the court erred in admitting the testimony. The admission of the accounts in evidence, mentioned in the eighth and ninth assignments of error, however objectionable upon other grounds, was not subject to the objection made,[1] and the motion to strike out of the testimony the chattel mortgage, which is the subject of the tenth assignment of error, was properly denied. The defendants' sixteenth, seventeenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth and twenty-fifth assignments of error cannot be sustained. They involve conclusions to be deduced from the facts, some of which are not conceded and therefore present questions to be considered by the jury. I think, however, the defendants' request contained in the fifteenth error assigned might, with much propriety, have been given upon the undisputed facts appearing upon the record.

---

[1] The objection made was that the evidence offered did not tend to prove what was claimed.

The defendants' counsel complains of the charges of the court contained in the following assignments of error, viz. :

(12) The court has held, and will now instruct you, that this mortgage, although not as full as might be, at the same time is sufficient to cover the property in question in this suit ; in other words, that it did cover the lumber which at that date, August 3d, was sold by Cass, Morrison & Gale to these two parties, Stevens & Oliver ; that the parties at the time it was made understood it so to apply ; and that this defendant, Hewitt, was afterwards apprised of what this mortgage covered, and was intended to cover.

(13) The court intends you to understand, gentlemen, and in your verdict bear that in mind, that this sale of lumber that was claimed to have been made—some three thousand dollars' worth of lumber—the court intends you to understand that that is the whole amount, whether delivered at that date or any subsequent time by Cass, Morrison & Gale to Stevens & Oliver ; that that is the lumber here in question ; that the mortgage covered the whole amount of that lumber, and so intended to do at the time the sale was made, although the lumber was delivered by piecemeal, as it were, or car-load, after that time ; the greater share of it that the parties bought—three thousand dollars' worth of certain grades of lumber,—and the testimony showing, which is not disputed, that the lumber was in the yard of Hood & Gale.

(14) The defendant Hewitt was not a purchaser for value in good faith of the lumber that was turned out to him by Oliver & Stevens to pay him the three thousand dollars which they had agreed to pay in lumber within thirty days.

It is quite clear that Stevens & Oliver had not the lumber at the planing-mill mentioned in the mortgage, and did not have title to the property described or intended to be described at the time the mortgage was given, and it had not yet been designated or set apart ; in fact, neither party could go to the place where the lumber was and point out what was described or intended to be described in the instrument. Really the amount could not be determined until it was delivered, or the quantity designated until the defendant Hewitt had made his selection and given his order for the same. Under such circumstances it was doubtful, to say the least, whether the mortgage was not void for uncertainty even as

between the parties thereto, and still greater must be that doubt when it is claimed that it was notice to third persons of the interest claimed by plaintiffs. Mr. Jones, in his work on Chattel Mortgages (§ 55 et seq.), speaking upon this subject says that "the mortgage must point out the subject-matter of it, so that third persons by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered;" and I think this Court has substantially adopted the same rule. *Willey v. Snyder* 34 Mich. 60. I fully agree with Chief Justice Cooley, in that case, that "Written descriptions of property are to be interpreted in the light of the facts known to and in the minds of the parties at the time. * * * A subsequent purchaser or mortgagor is supposed to acquire a knowledge of all the facts, so far as may be needful to his protection, and he purchases in view of that knowledge." The facts, however, from which such knowledge may be obtained must exist, and must be found in the description of the mortgaged property, or enough must be stated therein to enable a party by the use of reasonable diligence to ascertain them elsewhere.

While the intention of the parties may aid in ascertaining the true description, it cannot make it. It may aid, also, in applying it to the subject-matter, but it cannot apply it to subject-matter not known to the parties at the time the mortgage was made. And now comes the vital question upon this point: Did the parties themselves know what particular lumber was to be delivered or covered by the mortgage? I have not been able to satisfy myself that they did. In any event, however, it was a question of fact for the jury, and should have been submitted to them under proper instructions from the court. This was not done, but the question was decided by the court in the first two charges stated, and this was error. In the last of these charges we are now discussing, the court, in substance, told the jury that in the purchase the defendant Hewitt made of the lumber he was not a purchaser in good faith; and in this I also think the court erred. In thus charging, the court seems to have assumed

that nothing had been paid by the defendant for the lumber, because he had not conveyed a part of the property which formed a part of the consideration therefor. This was a question to be determined from all the evidence in the case. The testimony tended strongly to show that the contract rights between Oliver & Stevens and Hewitt were something more than the sale of the undivided one-half of the mill machinery, etc. It created partnership relations; gave to them the control and management of the business; gave to them the power to use the name of the firm and bind Mr. Hewitt, and subjected his individual property to the liability of paying firm debts which they had power and authority to contract; gave them the power to sell and dispose of the property of the firm; and although not the right, still the power to collect money due the firm and appropriate it to their individual use. This Hewitt claims was actually done by Oliver in this case. And Mr. Hewitt also swears that in the few months this firm was doing business they were owing him about $4000; that he never drew anything out of the concern, and that in November, 1884, he sold a one-half interest in the mill to a Mr. McElwee for $2000, and the new firm assuming $4000 indebtedness contracted by the firm of Hewitt, Stevens & Co.; and that there was a loss to Hewitt of $1000, the same being sold to McElwee for $1000 less than to Oliver & Stevens. Be this as it may, the case should have been determined upon the facts by the jury,—upon the facts as they existed at the time the suit was brought.

I am unable to discover that the stipulated facts in regard to the title contained in the agreement between Hewitt and Stevens & Oliver is of any particular consequence in the case. If the defendant's testimony was true, Hewitt, as between them, obtained good title to the lumber as soon as it was delivered, and to the extent of its value the debt of Stevens & Oliver to him was paid and canceled, which was less than the $3000. This does not seem to be denied, and I see no reason to believe the jury would not have so found. Stevens also says he knew nothing of the claimed mortgage until after the receipt of the lumber, and the application of its

value as above stated, which does not seem to be contradicted. I think the question of good faith should have gone to the jury. I fully recognize the rule contended for by the able counsel for the plaintiffs, and which is fully sustained by the authorities they cite ; but they are not applicable to the case as presented by the testimony on the part of the defendants under their theory, and upon the facts they had the right to have the case submitted by the court to the jury.

For the reason herein given the judgment must be reversed and a new trial granted.

COOLEY, C. J. and CAMPBELL, J. concurred.