ADANIRAN J. CASS ET AL. v. JOHN O. GUNNISON, ADMINISTRATOR, ETC., ET AL.

[See 58 Mich. 108.]

*Sale—Passing of title—Chattel mortgage—Constructive notice— Residence.*

1. On a sale of $3,000 worth of lumber out of any one of three grades, without further designation, marking, or setting apart, to be loaded on the cars as ordered, the title will not pass until the lumber is so loaded.

2. A mortgage of all the lumber *now* on hand at a certain mill, and in transit, belonging to the mortgagors, being the lumber purchased of the mortgagees, is not constructive notice of a lien upon lumber shipped to the mortgagors by the mortgagees, and by them delivered to a third party, *after* the execution of the mortgage.

3. A man's residence cannot be in one city, and his family occupy a homestead owned by him in another, where he visits them every two weeks and makes his home.

4. Under the evidence in this case, defendant's testator, Hewitt, is held not to have been guilty of any fraud in obtaining the title and possession of the lumber in suit.

Error to Mecosta. (Fuller, J.) Argued October 13, 1887. Decided January 12, 1888.

Replevin. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*D. F. Glidden* and *Frank Dumon*, for appellants.

*Mitchell & McGarry*, for defendant Gunnison.

MORSE, J. This is a suit in replevin, brought by the plaintiffs under and by virtue of a chattel mortgage, for the possession of a certain amount of lumber claimed to be covered by and embraced in said mortgage.

The case has been here once before, and the main facts of the controversy are stated in the opinion of Mr. Justice SHERWOOD, reported in 58 Mich. 108 (25 N. W. Rep. 52). The defendants had judgment in the court below.

I do not consider it necessary to discuss all the errors assigned by plaintiffs' counsel. The plaintiffs must stand upon their own title, and, unless their chattel mortgage entitles them to the possession of the lumber, they must fail in this action.

A careful examination of the record convinces me, in the first place, that the mortgage as executed did not cover but little, if any, of the lumber replevied. The mortgage was executed on the third day of August, 1883, and described the lumber mortgaged as follows:

" And also all the lumber now on hand at said mill [Hewitt, Stevens & Co.'s mill], and in transit, belonging to said first parties [Oliver and Stevens], being the lumber purchased from said second parties [the plaintiffs], and also all stock manufactured from said lumber."

The court was clearly right, from the evidence adduced by plaintiffs, when he instructed the jury that the title of the lumber sold by the plaintiffs to Oliver and Stevens did not pass until it was loaded upon the cars. The contract was verbal, and by it Oliver and Stevens bought of plaintiffs $3,000 worth of lumber. No particular class of lumber was designated in quantity. Oliver and Stevens were to have this amount out of any of three grades, as they might order; they could take all of one grade, or all of two grades. There was no designation, marking, or setting out of the lumber;

there could not be, under the terms of the agreement of sale. When they ordered a bill of lumber, plaintiffs loaded it, and then the title passed, and not till then.

Mr. Gale, one of the plaintiffs, testifies as to how the orders were filled:

"We would then instruct Hood, Gale & Co. to ship to Oliver and Stevens, at the mill stated, such and such lumber, giving the widths, lengths, dimensions, etc., and to send bills of lading to us. We made invoices from Hood, Gale & Co.'s memorandum. We were to ship the lumber as they ordered it from time to time."

He also swears:

"I don't think it made any difference what lumber I put in to fill in exchange of that that had been already agreed upon, provided I could get my price for it, and I made as much money as on the other; and I did substitute the one car of good lumber, and what hemlock there was,—nine or ten thousand feet."

An attempt was made on this trial to show that certain piles of lumber in the yard of Hood, Gale & Co. were examined, marked, and designated by one of the plaintiffs and Oliver as the lumber to be purchased, but the attempt was a signal failure. And there was no evidence to show that any of the lumber shipped came out of any of the piles examined by Oliver.

The amount that had been shipped or was in transit when this mortgage was executed was inconsiderable. The court, upon this branch of the case, further correctly charged the jury as follows:

"It is quite clear that Stevens and Oliver had not the lumber at the planing-mill mentioned in the mortgage, and did not have title to the property described, or intended to be described, at the time the mortgage was given, and it had not yet been designated or set apart. In fact, neither party could go to the place where the lumber was and point out what was described, or intended to be described, in the instrument." See *Cass v. Gunnison,* 58 Mich. 114 (25 N. W. Rep. 52).

There was no evidence that Hewitt had any notice of this mortgage whatever, except as far as its record was constructive notice. This lumber was purchased by Oliver and Stevens for the express purpose of turning the same out to Hewitt in part payment of the interest they had bought of him in the planing-mill. The description of the lumber conveyed by this chattel mortgage would not inform him that it covered lumber shipped by plaintiffs to Oliver and Stevens, and received of them by Hewitt, after its execution. It would not have been error for the court to so have instructed the jury; but he left the question to them to determine. If they could find from the testimony what lumber was covered by the mortgage, and that the lumber shipped afterwards had, before the execution of the mortgage, been so determined and designated that the parties to the instrument themselves knew what particular lumber was to be delivered or covered by the mortgage, they were authorized by the court to hold Hewitt, from the description in the mortgage, if properly filed, to a constructive knowledge of the fact that such lumber was so covered and embraced in the mortgage. This was more favorable to the plaintiffs than the law, in my opinion, would warrant.

The mortgage was filed in the city of Big Rapids on the thirteenth of August, 1883. It is conceded that Oliver was a resident of Grand Rapids. Stevens testified that he first came to Big Rapids in July, 1883. At that time he was a resident of Grand Rapids, and owned a house and lot in that city, in which house he and his family lived, and had resided for several years previous. When he left the latter place for Big Rapids, he offered his house for sale. He swears that he went to Big Rapids with the intention of making his home there. He did not move his family to Big Rapids until the last of August. He did not sell his house and lot in Grand Rapids, and moved back there in the spring of 1884. His wife and

child lived in the house in that city until they moved to Big Rapids.

The circuit judge correctly ruled that he did not gain a residence at Big Rapids until he moved his family there. Consequently, the filing of the chattel mortgage in that city was not constructive notice to Hewitt.

Stevens' residence could not be in Big Rapids, and his family occupy a homestead in Grand Rapids, while he was living with them, owned the place, and went home to them every two weeks. His residence ended at Grand Rapids, and commenced at Big Rapids, when he procured a house at the latter place, and moved himself, his family, and household goods into it.

The only remaining question to be disposed of relates to the good faith of Hewitt's purchase or holding of this lumber by virtue of his sale of a one-half interest in the planing-mill to Oliver and Stevens.

The court excluded all evidence of the acts and doings of Hewitt and the firm of Hewitt, Stevens & Co.,—which firm was composed of Hewitt, Stevens, and Oliver,—in regard to their firm matters and business about the mill after the date of the commencement of this suit. This exclusion was based upon and in accordance with the ruling of this Court when the case was here before. *Cass v. Gunnison*, 58 Mich. 113 (25 N. W. Rep. 54).

There is no dispute but as fast as the lumber was ordered of plaintiffs, and received by Oliver and Stevens at the Hewitt mill, it was turned over to Hewitt upon the debt of Oliver and Stevens to him, and in payment for the half interest which they had purchased of Hewitt. The title passed to him as it was so turned over, and it was immaterial what the arrangements or business was between them and Hewitt after the replevin. *Cass v. Gunnison*, 58 Mich. 116 (25 N. W. Rep. 54).

The court instructed the jury that there was no evidence

in the case tending to show that Hewitt was guilty of any fraud in obtaining the title to this lumber, or the possession of it. He was clearly right in this instruction.

The jury in this case were more favorably instructed in favor of the plaintiffs, I think, than they could legitimately claim under the circumstances. There was no evidence tending to show that Hewitt knew anything about this mortgage until he had acquired the title to this lumber, and he positively swore on the first trial, which testimony was read at the last trial, that he had no knowledge whatever of it. Yet the court charged the jury that, if they found Hewitt had notice of it, he would not be a purchaser in good faith of the lumber, and if he ascertained the existence of this mortgage before he received the lumber, and credited it to Oliver and Stevens, then it was his duty to make inquiries to ascertain what he was buying; if he knew at the outset that this lumber was to be bought on time, and it was not to be paid for, and these parties (Oliver and Stevens) could not pay for it, and that there was some claim held upon it by plaintiffs, then he bought it subject to the notice, and could not be a good-faith purchaser.

The jury evidently found he had no such knowledge. Indeed, they could not have found otherwise, from the testimony in the case. The evidence is conclusive—

1. That the mortgage did not cover the property replevied, or but a few dollars' worth of it.

2. The mortgage was not properly filed, and therefore constructive notice to no one.

3. Hewitt had no actual knowledge of the existence of the mortgage, and no such knowledge of any claim by plaintiffs upon the property as would put him upon inquiry.

4. The lumber had all been delivered to him, and the title had passed to him from Oliver and Stevens, before the issuing of the writ in this case.

He was a purchaser in good faith, and for value, of the lumber.

The case was fairly tried and properly submitted in the court below. If any one had reason to complain of the charge of the court, it was the defendant Gunnison.

It follows, therefore, that the judgment of the court below must be affirmed, with costs.

The other Justices concurred.