(Miami County Court of Common Pleas.)

THE STATE OF OHIO ex rel. v. A. R. BYRKETT.

---

1. The Ohio statute regulating the suspension or disbarment of an attorney at law from practice is penal in its nature, and should be strictly construed.
2. Unprofessional conduct, as used in the statute, means acts committed in the character of an attorney at law, and not as a private citizen, unless the act committed as a private citizen is one which evinces a lack of honesty, integrity and truthfulness, which are the essential qualifications of an attorney at law.
3. The "good moral character" required to be possessed by an attorney at law has relation only to his character for integrity and honesty; it embraces only those moral traits of integrity and honesty which fit him to transact fatihfully and honestly the business of an attorney at law.

---

HEISERMAN, J.

Regret having been expressed by the committee in a brief furnished the court since the motion to make definite and certain was sustained, and the first charge was amended, that a demurrer was not interposed to the first charge instead of a motion; and the belief having been expressed that the court, under the statute, has not the right to subject the charges filed against an attorney at law to the criticism of a motion or a demurrer, the court is impelled briefly to notice this objection, because of the importance and the interest attaching to questions arising out of so grave a case as the attempted removal of a lawyer from his high office.

In the first place, let it be premised, that at common law attorneys were, as now, officers of the court, and as such they were liable to be punished in a summary way, either by attachment, or having their names struck off the roll of attorneys under certain circumstances.

It is an inherent power residing in the court without the aid of any statutory enactment.

The exercise of the power may be regulated by statute, but the statute does not create it. Its existence is necessary and incidental to the court for its own protection, to secure the proper administration of justice, to maintain the prestige of the profession for integrity, to conserve the public good, and to protect clients from malpractice attended with fraud and corruption.

Weeks on Attorneys, p. 154; Bacon's Abrd'g. Att'ys II.

The statute in Ohio, is therefore, not needed to confer upon courts the power to suspend or disbar an attorney, but it has provided a wise and careful regulation for the exercise of such power, and in terms has enum-

erated causes for the suspension or disbarment of attorneys at law, in one or the other of which may be included all the grounds known to the common law, for the striking of attorneys from the rolls, so far as this court has been able to discover in the course of a long and searching examination of the cases and learning collected upon the subject.

Section 563, as amended, Vol. 91 O. L. 62, reads: "The supreme court, the circuit court, or the court of common pleas may suspend or remove any attorney at law for either of the following cases: Misconduct in office; conviction of crime involving moral turpitude, or unprofessional conduct involving moral turpitude."

It further provides that "judges of such courts are required to cause proceedings to be instituted against any attorney at law, when it in any manner comes to the knowledge of any judge in whose court such attorney practices, that such attorney is probably guilty of any of the causes of suspension or removal; but before any attorney is suspended or removed, written charges must be filed against him, stating distinctly the grounds of complaint, and a copy thereof, certified by the clerk under the seal of the court, shall be served upon him, and he shall after such service be allowed a reasonable time to collect and present his testimony in defense and be heard by himself or counsel."

It is contended on behalf of the committee that the proceeding is not of a criminal nature, and that the charges need not be averred with the particularity or certainty required by criminal procedure, but to the correctness of this claim, the court can not assent.

In the matter of Bayless, 28 Mich., 507, which was a proceeding which sought to have respondent's name stricken from the roll of attorneys for professional misbehavior, the court said: "While not a criminal prosecution, it is of that nature, and the punishment in prohibiting the party from following his ordinary occupation would be severe and penal."

The provisions of the statute for the suspension of an attorney from practice are penal in their nature and should be strictly construed.

Klingensmith vs. Keplar 41 Ind. 341; People vs. Turner 1 Cal. 143.

In Peyton's Appeal, 12 Kan. 398, the Court said: "We think the proceeding to disbar an attorney is a criminal proceeding, or at least it is a *quasi* criminal proceeding. Such a proceeding is for the public. It is always for misconduct on the part of the attorney. It is not for money or other property, and not to recover for any pecuniary loss sustained by the public. And it always involves disgrace to defendant. It takes from him a right of which he is already in possession. It takes away his business and his means of gaining a livelihood. And this it does, not for the purpose of giving the same to some other person, or to the state, but simply to deprive the defendant of the same. The whole thing is in the nature of a criminal forfeiture."

This court concludes that the Ohio statute regulating the suspension of an attorney at law from the practice of his profession is penal in its nature, and should be strictly construed.

The courts, then, of Ohio having the power thus summarily to act in such cases, and having statutory regulations for their guidance in the exercise of such power, the inquiry is: What mode of procedure is permissible after charges have been preferred against, and due service had upon an attorney at law?

Suppose a judge, having reason to believe that an attorney is probably guilty of any of the causes of suspension or removal, causes proceedings to be instituted against him; and suppose the committee having the prosecution in charge, after investigation, finds that the judge has been misinformed, but notwithstanding this fact, they formulate charges,

which upon their face disclose the fact that the grounds of the complaint are trivial, insufficient and clearly without the jurisdiction of the court. Can it be for a moment maintained, that, in such a case the accused cannot raise his voice in protest until the day of trial arrives? Can it be earnestly claimed that a court, upon whom has been conferred such extraordinary summary jurisdiction, must sit with hands tied and mouth closed until it has heard the evidence in support of such charges? Cannot a court, *sua sponte*, put an end to such a proceeding? Cannot the accused by the ordinary and usual modes of practice and procedure invoke the intervention of the court and by motion or demurrer attack the charges preferred against him? It seems to the court that the mere asking of such questions carries with it the refutation of the proposition that a court has not the right to subject such charges to the criticism of a motion or a demurrer.

Nor are we without authority on this question. Under the act to regulate the admission and practice of attorneys and counsellors at law, passed Feb. 14th, 1824, it was provided with reference to the suspension of attorneys "that every attorney or counsellor, before he is suspended, shall receive a written notice from the clerk of court, stating distinctly the grounds of complaint, or the charges exhibited against him; and he shall after such notice, be heard in his defense, and shall be allowed reasonable time to collect and prepare testimony in his justification." Under this act, complaint was made against a solicitor for malpractice in his official and professional character, and the relator prayed that the accused might be suspended from practicing as an attorney at law.

To this complaint, the defendant demurred, and the question as to the sufficiency of the charge was heard and determined by the supreme court upon demurrer.

The State on the relation of L. Kilbourn vs. Alvah Hand 9 O. 42.

The original charge, after alleging that A. R. B., on or about the first day of June, 1895, being engaged in the practice of law in Troy, Ohio, had in his employ as confidential secretary and stenographer and typewriter, one Augusta T.; that said Augusta T., prior to the time she became an employe of said B., was a virtuous woman, and is now between 18 and 20 years of age; and that a stenographer and typewriter was necessary for the proper conduct of the professional duties of said B. in his office; further complained, "that said B. in violation of his duties as an attorney at law and a citizen of the state, was guilty of unprofessional conduct, involving moral turpitude in this, to wit: That on or about said first mentioned date, to wit—June 1st, 1895—said B., by taking advantage of his employment of said Augusta T., did forcibly, willfully, maliciously and unlawfully debauch and seduce said Augusta T., and carnally know and cohabit with her; and since last mentioned date did repeatedly cohabit with and carnally know her."

The statute requires that the charges shall state "distinctly the grounds of complaint." A definition of the adverb, "distinctly," is with meaning, not confusedly, without the joining of one part or thing with another.

The charges or accusations must be clear, specific and circumstantial that the attorney may know how to defend.

Weeks on Atty's. Sec. 83.

A charge so grave in its nature, and possibly leading to such serious results, must be stated with great particularity.

People v. Allison, 68 Ill. 151; Dickinson v. Dustin, 21 Mich. 561; Ex Parte Smith, 28 Ind. 47.

And even our own code of civil procedure provides that when the

allegations of a pleading are so indefinite and uncertain that the precise nature of the charge is not apparent, the court may require the pleading to be made definite and certain by amendment.

Sec. 5088 R. S.

Is the precise nature of the charge against the respondent in this case apparent? It is charged that he "did forcibly, willfully and maliciously debauch and seduce said Augusta T., and carnally know and cohabit with her, and since June 1st did repeatedly cohabit with her."

As defined by lexicographers, the word "seduce" means to entice to surrender chastity, as a woman; debauch by means of promises or persuasion, overcoming natural scruples, as by promise of marriage; and seduction is, specifically, the act of inducing a woman of previously chaste character to consent to unlawful intercourse by enticement, persuasion or promise of marriage.

Sec. 6816 R. S. declares that, "Whoever has carnal knowledge of a female person forcibly and against her will is guilty of rape."

The committee expressly declared that rape was not intended to be charged, and yet it was charged almost in the words of our statute.

"Forcible seduction" is a contradiction in terms.

"Unlawful seduction" under our statute occurs when a male person over 18 years under promise of marriage, has sexual intercourse with a female person under 18 years of age and of good repute for chastity.

Without further considering this question, it is sufficient to say that there was definitely or indefinitely embodied in the original first charge, matter sufficient to lead to the conclusion that at least three separate offenses were sought to be charged: and it became of the utmost moment to the respondent that he should know specifically what charges he was to meet. The motion to make definite and certain was, therefore, properly sustained.

The first charge as amended and filed, and now before the Court reads as follows:

"We charge that on or about the first day of June, 1895, and for more than one year prior thereto, said B. being in active practice in partnership with one W. H. Gilbert, at the bar of said County, they having in their law office, in the court house in Troy, Ohio, as confidential secretary, and stenographer, and typewriter, one Augusta T. Said Augusta T. prior to the said date, was a virtuous woman, and is now between 18 and 20 years of age.

"Your committee says that a stenographer and typewriter was necessary, for the proper conduct of the professional duties of said B. and his said partner, in their law office.

"Your committee charge that said B., in violation of his duties as an attorney at law, and a citizen of the state, was guilty of unprofessional conduct, involving moral turpitude, in this, to-wit:

"That on or about said first mentioned date, to wit.—June 1st, 1895,— said B. by taking advantage of his employment of said Augusta T., he, the said B., being then a married man, living with his wife at Troy, Ohio, and of the age of about fifty-three years and of strong will power, did on or about said first day of June, 1895, while alone with said Augusta T. in the rear room or private office of said law office, he, the said B., did take hold of her, and laid her upon a sofa in said room, and by his seductive and over-powering influences then and there exerted by him over the said Augusta T., and after repeated protests on her part did succeed in getting her to yield to his carnal desires and did then and there debauch and seduce her, the said Augusta T., and since

said last mentioned date, did repeatedly carnally know her, and so do at times during the absence of his said wife, at the home of said B., and carnally know and cohabit with her: and since last mentioned date, did repeatedly cohabit with her and carnally know her."

To this charge the respondent demurs.

The accused is charged under the statute "with unprofessional conduct, involving moral turpitude," and the question to be determined upon the demurrer is, whether the facts stated in said first charge are sufficient to constitute the charge of unprofessional conduct involving moral turpitude.

The profession of law is the only one in which the legislature has assumed to regulate the conduct of its members, and lawyers constitute the only class of citizens answerable to the summary jurisdiction of courts, which have the power to deprive them of the right to exercise their professional calling.

Among the causes for such removal is that of unprofessional conduct involving moral turpitude.

The lawmakers did not provide for the suspension or removal of an attorney for any misconduct, even though it involved moral turpitude, and it evidently was not the intention so to do. Unprofessional conduct is the language used. What does it mean? It was not used to express different grades of "moral turpitude." If the conduct does not involve moral turpitude, there is no ground of complaint. And if it does involve moral turpitude, the degree is not important, if the act is not professional, unless, as has been suggested by counsel, it shows such depravity, or want of honesty or common integrity as to make it manifest to the court that the attorney does not possess the ordinary qualifications of an attorney, which require him to serve his clients faithfully and honestly.

What is unprofessional conduct? Unprofessional means, "violating the rules or ethical code of a profession."

In the Cunningham case, heard before the judges of the court of common pleas of Hamilton County, and reported in the 16th Law Bull. 447, the court said: "In the learned professions conduct is said to be unprofessional when it is contrary to the established proprieties of the profession. In the legal, as well as in other professions, there are rules and proprieties, the violation of which cannot be said clearly to invade the field of morals, or the ethics of the profession, but there are others which clearly invade the domain of morals, and these are the rules and proprieties to which the expression "moral turpitude" attaches, and where such rules are violated, the act of violation involves moral turpitude; in other words, unprofessional conduct involving moral turpitude simply designates one class of irregularities over which the courts are given jurisdiction."

"For the infringement of any or all of the other rules and proprieties of the profession, whatever they may be, the profession may regulate or discipline by exclusion from societies, or by failure to consult with, or otherwise, as the matter may require; but for irregularities and wrongs done in the performance of acts connected with or growing out of the profession of law, where such acts invade the province of morality, the courts are given disciplinary power."

In this connection, let us ascertain how the subject has been viewed by the courts, as gleaned from the reported cases:

"If the evidence of good moral character must be produced in order to obtain a license to practice, it is equally essential that this character should be retained; and when an attorney commits an act, whether in the discharge of his duties as an attorney or not, showing such a want of per-

.sonal or professional honesty as renders him unworthy of public confidence, it is not only the province but the duty of the court, to strike his name from the rolls. It may be true that some attorneys indulge in vices affecting to some extent their moral character; still, when such practices do not affect their personal or professional integrity they cannot be made the basis of a proceeding to remove from office." Baker v. Commonwealth; 10 Bush. Ky. 592.

"To warrant a removal, the character must be bad in such respects as shows the party unsafe and unfit to be intrusted with the powers of the profession." 36 N. Y. 651.

In the Mills case, 1 Mich. Rep, 394, the court said: "I do not wish to be understood as affirming that for every moral delinquency the court would be authorized to revoke the license of an attorney. In the exercise of sound discretion, the court should only entertain such as are in their nature gross, and unfit a person for an honest discharge of the trust imposed in him."

"Upon an information to have the name of an attorney at law stricken from the roll, charges affecting his character as a man of integrity, as a private citizen, will not be considered." People v. Allison; 68 Mich. 151.

"Although the general rule is that an attorney at law will not be disbarred for misconduct, not in his professional capacity, but as an individual, there are cases forming an exception, where his misconduct in his private capacity may be of so gross a character as to require his disbarment." In this case two of the justices dissented on the grounds that it was their duty "to lend encouragement and aid to maintain the high standard of professional ethics established, and it can be done only by holding all from highest to lowest, without regard to social connections, to a strict accountability for every breach of moral duty which shows a disregard for common honesty. A man who is not honest and honorable in all his business relations, whatever may be his qualifications otherwise, is clearly unfit for the discharge of the grave and often delicate responsibilities which the practicing attorney is from day to day required to assume." People v. Hughes; 105 Ill. 474.

"In some cases an attorney has been disbarred for want of integrity displayed in his conduct other than as an attorney, as shows him to be unsafe an unfit to practice law. But we believe the courts have never gone further than this." Penn. Reporter.

In the matter of Trumbore, Penn., Supreme Court, May, 1882, it was held that "the offense of fornication is not of such a character."

"An act merely discreditable, but not infamous, and not connected with an attorney's duties, while it would lose a member of the bar the favor and countenance of the high-minded men of the profession, cannot of itself give jurisdiction to the court to take judicial cognizance of it and expel him from office.

"To admit such a power would expose members of the bar to the whims, caprice, peculiar views and prejudices of judges. The office of an attorney is too important to him, to those dependent upon him and to the public, to be thus at the mercy of any one.

"The preparation of years to enable one to practice and the prospects of a lifetime ought not to be in the power of men, however upright, to blast, who from peculiarity of disposition or habits of thought, may exercise the power unjustly." Dickens Case; 67 Penn. St. 169.

In Ex Parte Wall, 107 U. S. 306 it was said by Mr. Justice Field:

"When the proceeding to disbar an attorney is taken for misconduct outside of his profession, the inquiry should be confined to such matters,

not constituting indictable offenses, as may show him to be unfit to be a member of the bar; that is, as not possessing that integrity and trustworthiness which will insure fidelity to the interests intrusted to him professionally, and on the inspection of any record of conviction against him for a felony or a misdemeanor involving moral turpitude. It is not for every moral offense which may leave a stain upon character that courts can summon an attorney to account. Many persons, eminent at the bar, have been chargeable with moral delinquencies which were justly a cause of reproach to them; some have been frequenters of the gaming table, some have been dissolute in their habits, some have been indifferent to their pecuniary obligations, some have wasted estates in riotous living, some have been engaged in broils and quarrels disturbing the public peace; but for none of these things could the court interfere and summon an attorney to answer, and if his conduct should not be satisfactorily explained, proceed to disbar him. It is only for that moral delinquency which consists in a want of integrity and trustworthiness, and renders him an unsafe person to manage the legal business of others, that the courts can interfere and summon him before them.''

In the light of those authorities, the conclusion seems inevitable that unprofessional conduct, as used in the statute, means acts of commission, or it may be of omission, committed in the character of an attorney at law, and not as private citizen, unless the act committed as a private citizen is one which evinces a lack of that honesty and integrity and truthfulness, which are the essential qualifications of an attorney at law. If the conduct charged has no relation to his duties, his obligations, his moral qualifications, as an attorney at law, the courts have no jurisdiction.

But, it is contended, on behalf of the commiittee, that since a man must have a ''good moral character'' before he can be admitted to the bar, he must retain a ''good moral character'' if he would remain in the profession.

The statement is correct, but its application to the case at bar the court does not believe proper.

What is ''good moral character'' as thus required for admission to the bar, and continuance in the profession? If judges would permit themselves to go into the vast domain of morals and require lawyers, practicing in their courts, to conform to their ideas of the standard of morals necessary to be maintained by attorneys at law, what man would be safe from the annoyance or possible disgrace of disbarment proceedings? The drinking of intoxicating liquors, the playing of games of chance, betting on horse races or elections, the use of profane language, and many other vices are deemed moral or immoral, as they conform to or fall short of the standard of morals adopted by individuals.

By what standard is the moral character of an attorney to be judged? Is it to be at the mercy of the whims, caprices, and prejudices of the courts of this state who can travel at will through the field of morals in passing judgment upon their fellowmen?

Certainly no such a condition was ever contemplated. In the opinion of the court the ''good moral character'' required to be possessed by an attorney at law has relation only to his character for integrity and honesty; it embraces only those moral traits of integrity and honesty which fit him to transact faithfully and honestly the business of an attorney at law. And in this conclusion, we have the sanction of our supreme court. In the case of The State v. Hand, it is said, ''General honesty and fidelity to clients are not only necessary to the success of the attorney, but even to the performance of his duties. Other good qualities may be wanting in

his character, and some vices may be present, but these are the essential virtues of his calling, nò more to be dispensed with than courage in a soldier, or modesty in a woman. The statute regulating admission to the bar requires the court to be satisfied that the applicant possesses these qualities. The public have a right to presume that the court are fully satisfied upon these points, and to regard a license to practice as a certificate of good character from them. And whenever the court shall become persuaded that an attorney has lost those qualifications, essential to his usefulness and necessary to the safety of his employment, they are wanting in their duties if they do not take away his means, and destroy his opportunities for mischievous actions."

It would be, perhaps, unprofitable to consider the question as to what criminal offenses, if any, are embodied in the first charge against the respondent, but it may be said in passing that no statute exists in Ohio, within the provisions of which the respondent could be criminally charged with seduction, and whether or not adultery has been charged we need not now determine.

At common law, when attorneys were charged with offenses not involving professional misconduct, the offense charged must be of the *crimen falsi*, or such as show a lack of integrity and honesty, and that the business of clients cannot safely be entrusted to the attorney. If, of the *crimen falsi*, the court had no jurisdiction before conviction or plea of guilty.

In Ex Parte Wall, 107 U. S. 280, it was declared:

"The rule to be deduced from the English authorities seems to be this: that an attorney will be struck off the roll if convicted of felony, or if convicted of a misdemeanor involving want of integrity even though the judgment be arrested or reversed for error; and also, (without a previous conviction) if he is guilty of gross misconduct in his profession, or of acts, which, though not done in his professional capacity, gravely affect his character as an attorney; but in the latter case, if the acts charged are indictable and are fairly denied, the court will not proceed against him until he has been convicted by a jury, &c."

This rule has, in the main, been adopted by the courts of this country.

And these principles of the common law, the court believes, should govern such proceedings in Ohio. If an attorney be charged with an indictable offense, not involving professional conduct, and he deny the charge when brought into court by summary proceeding, surely the court could not usurp the functions of a criminal court and jury, and deprive an attorney of his right to pursue his professional calling, dearer and more valuable, perhaps, to him than liberty itself, of which he cannot be deprived without due process of law.

Moral delinquencies, not affecting the professional moral character, which is an essential requisite of an attorney, are not cognizable to the courts in disbarment proceedings, unless conviction has first been had, or there be a confession of guilt.

In the opinion of the court, the allegation that the young lady in question was in the employ of the accused, as a confidential secretary, stenographer and typewriter does not bring the offense charged within the statute. The lawyer does not stand in confidential relations to his typewriter; she is a mere amanuensis, and their relations are no more professional than if she were doing literary work exclusively at the dictation of her lawyer employer in his own house. She stands in the same relation to her employer as do law students or clerks, or any other employes who relieve a busy lawyer of some of the details and drudgery incidental to the practice of law.

· Indiscretions committed of the kind charged cannot be said to have been done in the character or capacity of an attorney, but must be ascribed to the weakness, the passions, the frailties possessed in a greater or less degree by all mankind.

Grave as is the offense charged, much as the court may sympathize with the ruined girl; however great might be the hatred on the part of the court of such practices, under such circumstances; still, sitting as a court, bound to lay down the law, as I understand it, I am forced to the conclusion that the facts charged do not constitute unprofessional conduct involving moral turpitude.

The demurrer is accordingly sustained, and the first charge is dismissed.

The committee: W. C. Johnston, H. H. Williams, G. T. Thomas, W. D. Jones, W. A. Kessler, J. A. Kerr.

For the respondent: E. L. Williams, Geo. M. Eichelberger and John A. McMahon.