##### AT THE

## OCTOBER SESSION 1868, IN BOSTON.

##### PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. EBENEZER R. HOAR,
Hon. HORACE GRAY, JR.,
Hon. JOHN WELLS, } JUSTICES.
Hon. JAMES D. COLT,

## BARNSTABLE COUNTY.

### ALVAN S. HALLET & others *vs.* ORLANDO BASSETT.

In an action for a debt, begun twelve years after the debt accrued, these facts appeared: The defendant, a sailor, was born and had his domicil in Barnstable, and was there residing with his wife and children, six years before the accruing of the debt, when he went alone to California, remained there two years, then returned, and lived in Barnstable during the other four years, except one interval of fourteen or fifteen months when he was on a voyage. The family was then broken up by the insanity of his wife, who was removed, by legal commitment, as a resident of Barnstable, to a hospital in another place, where she died two years afterwards, while he was at sea; the children were put at school in a different part of Barnstable; and all his furniture was disposed of, except what was removed to a bedroom in his brother's house in Barnstable, which for the twelve years ensuing was always kept for his use when he was in the town, and at other times as a spare room, and was used by him when there, except when he stayed in the neighboring house of his father. During these twelve years, he was absent from Barnstable most of the time; on foreign or coastwise voyages, one of them lasting eighteen months; in New York; in Boston; and in the " oil regions;" but he returned to Barnstable at in-

tervals for short visits, and once (about the middle of the period) stayed there an entire year. For the first four of the twelve years, except six months when he was on a voyage, he lived in New York; and during the last two of the four he visited Barnstable only twice a year. In the last half of the twelve there were three successive years, the first of which he passed as a pilot between New York and Boston; the second as a watchman in New York; and the third in the oil regions. During the sixteen months immediately preceding the end of the twelve years and the beginning of the action, he was "in Barnstable and in Boston." There was no evidence that he had any house, furniture, or property of a permanent character, elsewhere than in Barnstable, during the whole period; when his wife died her remains were brought to Barnstable for burial; and he testified that his intention always was to retain Barnstable as his home and to return to it. But he testified also that, when he went to New York and to the oil regions, "he went looking for business, and intended to remain as long he had business;" and that he paid no poll tax in Barnstable, and voted but once there, during the twelve years though he testified further that neither did he pay a tax nor vote elsewhere. *Held,* that his domicil was in Barnstable for such a length of time after the debt accrued that the statute of limitations was a bar to the action.

CONTRACT, seeking relief in equity, for a balance due to the plaintiffs as partners with the defendant upon the closing of a partnership adventure to California. Writ dated April 22, 1867. The answer set up the statute of limitations as a bar to the claim. The case was heard by *Foster,* J., and by him reserved for the determination of the full court on a report of which the following is the material part, " the court being authorized to draw all such inferences and conclusions of fact as a single judge ought to, from the evidence reported, and such judgment to be rendered as in their opinion the case may require : "

" The last outstanding claim in favor of the partnership was settled August 15, 1855, and the account made up at that time. It appeared in evidence that the defendant was a native of Barnstable; had been a shipmaster, and always had his domicil in Barnstable, up to the time the parties went to California, which was in 1849. When he went to California, he left his family in Barnstable, and returned there in December 1851. After he returned, he remained about six months in Barnstable, then went in command of a vessel to Callao, returning to Barnstable .n October 1853. In 1855, his wife having become insane, his family was broken up. The wife was taken to the hospital at Taunton, by legal commitment, as a resident of Barnstable and his children were sent into another part of the town of Barnstable to school. His furniture was all then disposed of,

except a portion which was carried to his brother's house in Barnstable, where a sleeping room was furnished with it. At this time he went to New York, and was there two years, until 1857, in the business of shipkeeping and piloting, during which time he came to Barnstable occasionally, being in Barnstable at intervals during the two years; and he testified that he made his home at his father's and brother's, two different places of residence, near each other, in Barnstable. In 1857, the defendant took a steamer out to San Francisco and was absent six months, at the end of which time he came to Barnstable. While he was absent on this voyage his wife died at the hospital, and her remains were brought to Barnstable for burial. The defendant was then in New York from 1857 to 1859, shipkeeping and piloting, coming to Barnstable twice a year. In June 1859, he sailed from New York for China as master of a ship, returning in November 1860, and was then in Barnstable a year. In December 1861, he went to New York, and was there, discharging vessels and piloting between New York and Boston, till 1863, and was watchman in a United States ordnance store in 1864. During this period he came occasionally to Barnstable as before. He then went to the 'oil regions,' where he remained one year. After he returned from the oil regions, he was in Barnstable and in Boston up to the date of the writ. The brother, at whose house the sleeping room was furnished with the defendant's furniture, testified that the room was always kept for the defendant's use when he was in Barnstable, and in his absence was used as a 'spare room' as occasion required. The defendant testified that, when he went to New York, and when he went to the oil regions, he went looking for business, and intended to remain as long as he had business. He also testified that his intention always was to return to Barnstable and to retain that as his home; that he had voted but once in Barnstable since 1855; that he did not know that he had paid any poll tax since that time; that since 1855 he nad had no place of abode but his father's and brother's, and that he had never paid a tax or voted in any place but Barnstable."

*G. A. King*, for the plaintiffs.

*G. Marston,* for the defendant.

COLT, J. The plaintiff seeks to avoid the effect of the lapse of time upon his right of action, by showing that the defendant has been absent from and resident out of the state such portion of the time since his cause of action accrued, that, under the Gen. Sts. *c.* 155, § 9, it yet remains to him. It is well settled that such absence from and residing out of the state must be, not merely temporary and occasional, but of such character and with such intent as to constitute a change of domicil. *Collester* v. *Hailey,* 6 Gray, 517. *Langdon* v. *Dowd,* 6 Allen, 423. We are accordingly required to determine, upon the facts stated in this report, the question of the defendant's legal domicil during the time which has elapsed since the cause of action accrued. And we are of opinion that a jury, under proper instructions, and drawing all such inferences and conclusions of fact as the evidence justifies, must find that his domicil was in Barnstable for such length of time as to bar this demand.

The definition of domicil is difficult, if not impossible. To determine as a matter of fact where it is in any given case is in most instances easy and simple. It is only when the actual facts of residence are ambiguous and uncertain, in the absence of any settled and permanent abode, and when the intention of the party cannot be ascertained, that it becomes difficult. It then not uncommonly requires for its solution an inquiry into the habits, character, pursuits, domestic relations, and indeed the whole history, of the man from his youth up, depending in the end upon such preponderance of the evidence in favor of one of two or more places that the facts and circumstances tending to show a domicil there overbalance all like proof tending to fix it elsewhere.

Without going into all the evidence reported, it is sufficient to advert to a few of the well settled maxims applicable. Domicil of origin or domicil acquired remains until a new one is acquired. Native domicil is not so easily changed as acquired domicil, and more easily reverts. A man can have but one domicil at the same time for the same purpose. Change of domicil does not depend so much upon the intention to remain

in the new place for a definite or indefinite period, as upon its being without an intention to return. An intention to return, however, at a remote or indefinite period, to the former place of actual residence, will not control, if the other facts which constitute domicil all give the new residence the character of a permanent home and place of abode. The intention and actual fact of residence must concur, when such residence is not in its nature temporary. There is a right of election by expressed intention, only where the facts of residence are to some extent ambiguous. Notes to *Guier* v. *O'Daniel*, 1 Am. Lead. Cas. (4th ed.) 747–750. *Wilbraham* v. *Ludlow*, 99 Mass. 587. *Shaw* v. *Shaw*, 98 Mass. 158.

In the present case, the defendant appears to have been a seafaring man, principally employed in maritime pursuits. Facts which would be significant and satisfactory in reference to persons of more fixed and permanent habits become of less moment when connected with one whose life is of necessity roving and migratory. The domicil of such a one continues during years of wandering and absence. The omission to vote or pay taxes for a part of the time in Barnstable, in connection with the fact that he never voted or paid taxes anywhere else, is of small weight. The breaking up of his family there was not occasioned by a change of residence. He always had there a sleeping room furnished with his furniture, which he occupied more or less frequently and for longer or shorter periods. His children remained there. He had no house or furniture or property of a permanent character elsewhere. His residence elsewhere was in different places, of comparatively short duration. And on the whole we think it is a case where effect should be given to the intention which he testifies he always had, to return to Barnstable and to retain that as his home.

*Judgment for the defendant.*