PETER COMES, Appellant, v. JOHANNA COMES, Appellee.

**COURTS:** ."Recess" Does Not Terminate Term. A term of court continues until an adjournment *sine die*, or until a new term commences.

**JUDGMENT:** "Timely" Motion to Set Aside. A motion to set aside a default, made after a "recess," but before the final adjournment of the term, is timely.

**JUDGMENT:** Default Judgment—Power to Set Aside. A default judgment in a divorce action, equally with any other proceeding, may be set aside on proper showing.

**JUDGMENT:** Setting Aside Default. A timely application to set aside a default may be ruled on at a later term, and by a presiding judge other than the judge who rendered the judgment.

**JUDGMENT:** Setting Aside Default—Effect. An order setting aside a default *ipso facto* sets aside the judgment rendered on the default.

**JUDGMENT:** By Default—Effect. A plaintiff who obtains a judgment by default may not "take his hat and withdraw himself from the jurisdiction of the court" *until the end of the term*, and not then if, in the meantime, a motion to set aside the default be filed.

**JUDGMENT:** Excusing Default. The excuse for a default must be established by affidavit. Record reviewed, and held to sufficiently excuse a default in divorce proceeding.

*Appeal from Carroll District Court.*—M. E. HUTCHISON, Judge.

JULY 6, 1920.

REHEARING DENIED DECEMBER 31, 1920.

APPEAL from an order setting aside a decree of divorce granted plaintiff, on the application of defendant.—*Affirmed.*

*Brown McCrary* and *John F. Urbany,* for appellant

*Lee & Robb,* for appellee.

LADD, J.—I. A decree of divorce, in a suit begun by plaintiff, was entered on October 15, 1919, and, on January 23, 1920,

was set aside, on motion of defendant, filed December 31, 1919.

1. COURTS: "recess" does not terminate term.
One of the errors assigned is that the motion was not filed during the term at which the decree was entered. Court convened in regular session October 13, 1919, and on the 31st "was declared at recess until further orders." A like entry was made on November 22d following, and, on December 20, 1919, "court convened, pursuant to recess, all officers being present when the following proceedings, among others, were had and done. * * * Court declared at recess until further orders." Judge Albert had been assigned to preside at this term, but the last entry was by Judge Hutchison, presiding. See Section 241 of the Code.

The times the several terms of court begin are fixed by order (Section 232, Code Supp., 1913), and, in the absence of an adjournment *sine die* sooner, terminate when the next succeeding term begins.

2. JUDGMENT: "timely" motion to set aside.
*Jones v. McClaughry,* 169 Iowa 281. That decision is not affected by subsequent changes in Section 232 of the Code, for these relate solely to the publication of the orders of the judges in the several districts, fixing the dates when and places where the several terms of court shall be held, and the judges who shall preside thereat. See 15 Corpus Juris 876. As the succeeding term did not commence until January 5, 1920, the application to set aside the default was filed during the term in which it was entered.

II. The defendant failed to appear or to file any pleading. Default and decree were entered on the 3d day of the term, i. e., October 15, 1913, as authorized by Section 3788 of the Code.

3. JUDGMENT: default judgment: power to set aside.
Counsel for appellant contends, however, that this section is not applicable, for that the power to grant divorces is legislative; and that such power was delegated on conditions prescribed, and none other; and that, as a legislative divorce was irrevocable, that by the courts must be.

Divorces were granted in England by Parliament, upon relinquishment of jurisdiction by the ecclesiastical courts, but the legislature of this state never possessed such power, and therefore might not delegate it. Section 27, Article 3, of the Constitution of Iowa. It was not prohibited, however, from

conferring jurisdiction over the entire subject-matter of divorce and annulment of marriages, and this was done by enacting that:

"The district court in the county where either party resides has jurisdiction of the subject-matter of this chapter." Code Section 3171.

Since the court had jurisdiction of the subject-matter and the parties, irregularities in pleadings and procedure may not be challenged in a collateral attack on the decree. *Richardson v. King*, 157 Iowa 287; *Gelwicks v. Gelwicks*, 160 Iowa 675; *Williamson v. Williamson*, 179 Iowa 489; *McCraney v. McCraney*, 5 Iowa 232; *Ellis v. White*, 61 Iowa 644; *Mengel v. Mengel*, 145 Iowa 737. In other words, these are not jurisdictional. The discussion in a general way, found in *Mollring v. Mollring*, 184 Iowa 464, is to be approved, on the theory that a remedy prescribed in granting a right is to be construed as so connected with the grant that it must be pursued in enforcing the right; but this does not follow where jurisdiction over the subject-matter is conferred on condition specifically defined, as in the section quoted. The residence of either party being in the county where the district court is sitting, jurisdiction of the subject-matter is acquired by notice. That residence is intended to be the sole jurisdictional fact is the more manifest from the requirement in Section 3173 of the Code, that:

"If the averments as to residence are not fully proved, the hearing shall proceed no further, and the action be dismissed by the court."

Such has been the ruling of this court since *McCraney v. McCraney*, 5 Iowa 232, and there is no disposition to recede therefrom. The procedure prescribed in Chapter 3, Title XVI, is that peculiar to causes for divorce, annulment, and alimony, and does not purport to obviate the general rules of procedure, in so far as applicable, prescribed in Title XVIII. Provisions peculiar to the remedy sought are prescribed, precisely as in chapters relating to other proceedings, as in mandamus, to obtain an injunction, for the recovery of real estate, and others. In other respects, the general provisions concerning procedure, as prescribed in the title on procedure, obtain, in so far as applicable. No authority to the contrary is cited, and surely

the suggestion that divorce is a creature of the statute furnishes no reason for ignoring the procedure prescribed for the disposition of causes generally. That legislative divorces were irrevocable is not a reason for so construing those decreed by court under a procedure declaring judgments and decrees generally subject to correction and to being set aside, on appropriate showing. *Gilruth v. Gilruth*, 20 Iowa 225; *Tollefson v. Tollefson*, 137 Iowa 152. And *In re Estate of Feldner*, 167 Iowa 150, ruled that Section 3796 of the Code, relating to actions *in rem*, was not applicable to decrees in divorce cases; but this conclusion does not affect or limit the applicability of Section 3790 of the Code, which seems to be inclusive of judgments entered on default. We are of opinion that the section relating to the entry of judgment by default, Section 3788, as well as that providing for setting aside defaults, may be resorted to in suits for divorce.

III. It is urged, however, that Section 3790 of the Code authorizes setting aside the default, but not the judgment entered thereon, and also that only the judge presiding at the entry of the decree may, when presiding, set aside the default. That section provides that:

4. JUDGMENT: setting aside default.

"Default may be set aside on such terms as to the court may seen just, among which must be that of pleading issuably and forthwith, but not unless an affidavit of merits is filed, and a reasonable excuse shown for having made such default, nor unless application therefor is made at the term in which default was entered, or if entered in vacation, then on the first day of the succeeding term."

Though the application must be made during the term, as it was, there is no requirement that it be ruled on during the same term. All business not otherwise disposed of stands continued. Section 238 of the Code. A different judge presided at the January term, but the court was unchanged, and might properly proceed with the business before it with entire freedom, even to the extent of setting aside rulings entered at a previous term. See *McClain v. Capper*, 98 Iowa 145; *Van Werden v. Equitable Life Assurance Society*, 99 Iowa 621, 623; *State v. Jones*, 115 Iowa 113; *Renner Bros. v. Thornburg*, 111

Iowa 515. The application to set aside the default was addressed to the court, and not to the judge thereof, and the court, regardless of what judge presided, had full authority to pass on the application. There is nothing in the point that the statute contemplates setting aside the default only, and not the decree. The decree rests upon the finding that defendant is in default; and, if the default be set aside, the decree necessarily goes with it. The sole purpose of setting aside the default is to open the cause for defense.

5. JUDGMENT: setting aside default: effect.

IV. It is said, however, that, upon the entry of the decree, the plaintiff had the ''right to take his hat and leave the court room and withdraw himself from the jurisdiction of the court.'' Ordinarily, this is true, as appears from the numerous decisions cited, none of which relate to judgments by default. These are taken always subject to the right of the defaulted party to apply to the court during the term to have the default set aside. For the purpose of such an application, the successful party continues in court during the term, and no notice of filing the application is required. *Lake v. Jones*, 49 Ind. 297. Cases may arise where the court will exact, in the exercise of its discretion, the service of notice as a condition to opening the judgment or decree for another hearing; but, if so, this will be to guard against misunderstanding or inadvertence, and not in order to acquire jurisdiction already had. None of the decisions cited by appellant discuss the point or rule to the contrary. We conclude, therefore, that, as plaintiff was in court when the application to set aside the default was filed, there was no error in overruling the objections raised by him to the jurisdiction.

6. JUDGMENT: by default: effect.

V. The application to set aside the default did not recite the excuses therefor, but these were contained in affidavits attached thereto, and made a part thereof. All exacted by Section 3790, quoted above, is that a reasonable excuse be shown for making such default. As the requirement is that it be shown, not alleged, the fair implication is that the excuse must be established by affidavit. The defendant swore that the original notice was served on her about ten minutes before she departed for Janesville,

7. JUDGMENT: excusing default.

Wisconsin, where she had previously engaged to begin work three days later; that she handed the notice to her son, with instructions that he see Robb, of the firm of attorneys Lee & Robb, and have him look after her interests in connection with the divorce suit, and, in leaving, relied on him to do this; that, about September 21, 1919, she left Janesville for Cincinnati, Ohio, in search of employment, and finally was engaged as cook at the Jefferson Hotel, of South Bend, Indiana, where she was still engaged; that, about the same time, she wrote to her brother-in-law, one Hannasch, at Carroll, about the suit for divorce, and asked him to ascertain from Robb the status of the case; that she did not write to Robb because of not knowing his initials; that she requested an answer, in care of one Brown, at Evanston, Wisconsin, for the reason that she had experienced some trouble in getting her mail at Janesville; that she notified Brown to forward any letter received to her at Cincinnati, and afterwards at South Bend, but received no reply; that, in October, she wrote to Hannasch again, inquiring whether Robb was looking after the matter, and received reply that a divorce had been granted. Hannasch confirmed her statement in respect to her having written to him, and swore that, shortly after receiving the first letter, he called on Robb, and, upon inquiry, ascertained that her son had shown him the original notice, but had made no arrangement for him to represent defendant; and that, in a letter mailed defendant, in care of Brown, he stated these facts. The affidavit of Robb confirmed the foregoing, and further stated that he told defendant's son that it would be necessary for her to defend the action, to which the son made no response; and that affiant did not understand that he was employed, and so informed Hannasch. From these affidavits, the court might well have concluded that defendant exercised that degree of vigilance which an ordinarily prudent person in like circumstances would have exercised in the employment of an attorney to appear for her, and to attend to such defense as she might interpose. She had arranged to leave Carroll for Janesville in about ten minutes, and was not at fault in doing so in order to reach the latter place in time to begin work, as she had agreed. The son had attained his majority, and, for all that appears, was of ordinary intelligence,

and might be trusted to carry out his mother's directions. It seems this was not so, and that he did not advise his mother of his failure to engage the services of Robb. Hannasch wrote her the facts, but this letter miscarried; and, through no fault of defendant, her appearance was not entered, nor defense interposed. The court did not err in ruling that a reasonable excuse for the default was shown. The order setting aside the default is—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.