FRANK E. HARRIS, Appellee, v. MARIE GEARY HARRIS, Appellant.

OCTOBER 18, 1927.

REHEARING DENIED JANUARY. 20, 1928.

*Harold E. Lippincott, Maxwell & Ryan*, and *James B. Ryan*, for appellant.

*Parrish, Cohen, Guthrie, Watters & Halloran* and *Thomas J. Guthrie*, for appellee.

DE GRAFF, J.—Plaintiff and defendant are husband and wife. This is a divorce action. A special appearance was filed by the defendant (appellant), denying the jurisdiction of the

district court of Iowa in and for Polk County on the ground that the plaintiff was not a resident of the state of Iowa. Evidence was introduced by depositions and oral testimony. The court overruled and denied the special appearance; hence this appeal.

The one controlling question, although novel, finds easy solution. The question is whether a person who is an officer in active service in the army of the United States can acquire a domicile in the army post or camp where he is stationed, even though he establishes his family there.

The numerical weight of judicial authority answers the question in the negative. *Stevens v. Allen*, 139 La. 658 (71 So. 936); *Radford v. Radford* (Ky.), 82 S. W. 391; *State ex rel. Spence v. Judge of Ninth Judicial Circuit*, 13 Ala. 805; *Mead v. Carrol*, 6 D. C. 338; *Pendleton v. Pendleton*, 109 Kan. 600 (201 Pac. 62); *Inhabitants of Brewer v. Inhabitants of Linnaeus*, 36 Me. 428; *Tibbitts v. Townsend*, 15 Abb. Pr. (N. Y.) 221; *Graham v. Commonwealth*, 51 Pa. St. 255 (88 Am. Dec. 581); *Williams v. Saunders*, 5 Cold. (Tenn.) 60; *Henderson v. Ford*, 46 Tex. 627; *Yelverton v. Yelverton*, 1 S. & T. 574; *Attorney General v. Napier*, 20 L. J. Ex. 173; *In re Macreight*, 30 L. R. Ch. D. (1885) 165; 19 Corpus Juris 418. The legal principle is declared and approved by the American Law Institute. See Conflict of Laws, Restatement No 1, Topic 3.

A naval officer cannot acquire a domicile at his station or on his vessel, for the same reason,—that his going and staying at his post when so ordered are not a matter of his choice. *Knowlton v. Knowlton*, 155 Ill. 158 (39 N. E. 595) (reversing 51 Ill. App. 71); *Brown v. Smith*, 15 Beav. 444.

An officer may ask for a post, and may, on his application, be assigned to it; but this is entirely in the will of his superior officer, and the choice is not in the power of the applicant. Nor does an officer under martial discipline, when detailed for special duty in a certain place, acquire a domicile there, although he may take his family there (*Knowlton v. Knowlton*, supra; *Remey v. Board of Equalization*, 80 Iowa 470); and a person who enters the army of another country gets no domicile in the country whose army he joins. *Ex parte Cunningham*, 13 L. R. Q. B. D. (1883-84) 418. Therefore, a person under such circumstances cannot, in any proper sense of the term, have a residence any-

where other than the home he has left, since he has no choice as to where he goes, the time he can remain, or when he shall return. To gain either an actual or a legal residence, there is, of necessity, involved at least the exercise of volition in its selection, and this cannot be affirmed of the residence of either a soldier or a sailor in active service. *Radford v. Radford,* supra.

It is true that an officer or a private may establish a home near his military station, and thus acquire a domicile there, but this must be established by independent evidence of a change of domicile to that place. *Ex parte White,* 228 Fed. 88.

If a soldier stationed at any army post is permitted to live outside the post, it was held in *In re Cunningham,* 45 Misc. Rep. 206 (91 N. Y. Supp. 974), such person may acquire a domicile there. There seems to be no doubt that a soldier may acquire a new domicile apart from the army, and the fact that he cannot stay in the new home if called away to the army does not prevent his forming the *animus manendi* and acquiring the domicile there. *Mooar v. Harvey,* 128 Mass. 219; *Hodgson v. De Beauchesne,* 12 Moore P. C. 285; *President of the United States v. Drummond,* 33 Beav. 449; *Attorney General v. Pottinger,* 30 L. J. Ex. 284.

We now turn, for a moment, to the essential allegation of the plaintiff's petition and the provision of the statute called in question. The petition of plaintiff, *inter alia,* alleges:

"That he is now, and has been for the past twenty years, a legal resident of the city of Des Moines, Polk County, Iowa, and that such residence has been in good faith, and not for the purpose of obtaining a divorce only."

The Code of Iowa provides:

"The district court in the county where either party resides has jurisdiction of the subject-matter of this chapter [divorce]." Section 3171, Code of 1897 (Section 10468, Code of 1924.)

In *Melvin v. Lawrence,* 203 Iowa 619, it is said:

"It is the law of this state that, if either party to the divorce action was a resident of this state, the court has jurisdiction, and the decree will be valid."

The Code further provides:

"If the averments as to residence are not fully proved, the

hearing shall proceed no further, and the action be dismissed by the court.'' Section 10473, Code of 1924.

The plain intent of the statute is manifest, and a bona-fide residence is essential, to confer jurisdiction. This rule has obtained since the decision in *Hinds v. Hinds*, 1 Iowa (Clarke) 36. See, also, *Williamson v. Williamson*, 179 Iowa 489; *Comes v. Comes*, 190 Iowa 547; *Scott v. Scott*, 174 Iowa 740.

The record facts in the instant case are undisputed, and it is shown that the plaintiff was born in Poland, and came to Des Moines in 1877, with his mother, to join his father, who had immigrated here prior thereto. His father became a naturalized citizen before the plaintiff reached his majority. The parents of plaintiff continued to reside in Des Moines, and upon the death of the mother, a few years ago, she was buried in Des Moines. The father continued to live in said city, to which he came more than 50 years ago, and still resides there. The plaintiff attended and was graduated from the East Des Moines high school in 1887. He continued to live in Des Moines, and in 1888 was appointed by the Honorable E. H. Conger, then congressman from the seventh congressional district, to West Point, and upon a competitive examination was admitted. He was graduated from the West Point Military Academy in June, 1892, and returned to Des Moines, to await orders from his government. Subsequently, he was ordered to Governor's Island, New York, where he remained about a year. He was then ordered to Fort Sheridan, Chicago, where he remained about three years, and thence to Ft. Monroe, Virginia, where he remained two years. It is sufficient to state that thereafter he continued in the military service of his government, and was stationed at different military posts.

In 1901, while stationed in the service at Ft. Monroe, he married the appellant. Subsequently, he was ordered to the Philippine Islands, where he remained in service for three years, returning to the United States in 1915. At the outbreak of the World War, he was ordered to Washington, and a little later, was ordered to Chicago, where he was adjutant-general. After several changes in station, he was ordered to the Panama Canal Zone, in 1922, and remained there until 1925, when he was ordered to Ft. Banks, Massachusetts, where he was stationed at the time of the hearing of this case.

At all times in question, he was in the military service of the United States government, and was stationed in places over which the government of the United States had complete and absolute control. It is quite apparent that the only residence the plaintiff ever had was Des Moines, Polk County, Iowa; and he testified that, whenever the government released him from his duties, he intended to return to Des Moines, and make it his future home.

A residence once established continues until a new one is acquired. A change of residence does not consist solely in going to and living in another place, but it must be with the intent of making that place a permanent residence. The temporary absence from the state of one domiciled there will not be held a change of residence, unless to the fact of residence elsewhere be added *animus manendi*; for a domicile, having once been acquired, continues until a new one is actually acquired, *animo et facto.* 9 Ruling Case Law 403.

The intent of the plaintiff has been declared; and, although he never voted in Des Moines, he would have been so privileged, had the opportunity been presented. He never voted elsewhere. He always claimed Des Moines as his home. On several occasions, he visited his parents in Des Moines, and with the thought that he was "coming home." Surely, the plaintiff had a legal residence somewhere. During his long period of military service, from private to colonel, he may not be viewed as occupying, in a residential sense, "No Man's Land," nor does he classify with Edward Everett Hale's "A Man Without a Country."

There is some confusion in legal nomenclature in the terms "inhabitant," "resident," and "citizen." The term "inhabitant" is not synonymous with "citizen." *Spragins v. Houghton*, 2 Scam. (Ill.) 377; *State ex rel. Jeffries v. Kilroy*, 86 Ind. 118. Nor do the words "inhabitant" and "resident" in a divorce statute relative to the residence and inhabitancy of the plaintiff necessarily imply the same legal meaning. The terms are not necessarily coextensive, coexistent, or synonymous. *Wallace v. Wallace*, 62 N. J. Eq. 509 (50 Atl. 788).

In *State v. Savre*, 129 Iowa 122, it is said:

"The vital inquiry, then, in determining the residence of a person always is, where is his home, the home where he lives, and

to which he intends to return when absent, or when sick, or when his present engagment ends.''

See, also, *Taylor v. Independent Sch. Dist.*, 181 Iowa 544; *Mt. Hope Sch. Dist. v. Hendrickson*, 197 Iowa 191; *Carpenter v. Carpenter*, 30 Kan. 712 (2 Pac. 122); *Duxstad v. Duxstad*, 17 Wyo. 411 (100 Pac. 112); *Watkinson v. Watkinson*, 68 N. J. Eq. 632 (69 L. R. A. 397); *Cohen v. Cohen*, 3 Boyce (Del.) 361 (84 Atl. 122); *Miller v. Miller*, 88 Vt. 134 (92 Atl. 9); *Inhabitants of Whately v. Inhabitants of Hatfield*, 196 Mass. 393; *Hallet v. Bassett*, 100 Mass. 167.

It may further be pointed out that, under constitutional provision of the state of Iowa:

''No person in the military, naval, or marine service of the United States shall be considered a resident of this state by being stationed in any garrison, barrack, or military or naval place or station within this state.'' Article II, Section 4, Constitution of Iowa.

It is presumed that the laws of every other state are the same as those of this state, in the absence of any showing to the contrary. In fact, there are constitutional provisions in thirty-six states of the American Union which provide that no soldier or sailor or marine in the military or naval service of the United States shall acquire a residence in or be deemed a resident of a state by reason of his being stationed on duty within the state. There are a number of similar statutory provisions embodying the same prohibition in other states: for example, Nevada, New York, Utah, and Vermont,—although the constitutions of said states in this particular are silent.

We conclude, therefore, that the trial court ruled correctly, and the order overruling the special appearance is—*Affirmed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.