V. LEONARD JULSON, appellee, v. MARGARET D. JULSON, appellant.

No. 50927.

(Reported in 122 N.W.2d 329)

302

June 11, 1963.

Beck & Butler, of Mason City, for appellant.

Stanley L. Haynes, of Mason City, for appellee.

STUART, J.—Husband filed a petition for divorce in Cerro Gordo County. Wife appeared specially to challenge the jurisdiction of the court upon the ground that neither party was a resident of Iowa when the petition was filed. The district

court determined the plaintiff was a resident and overruled defendant's special appearance. Permission was granted for defendant to pursue an interlocutory appeal from this ruling.

It is conceded that the parties hereto had acquired a domicile in Mason City prior to July 18, 1961. It is also conceded the wife was not a resident of Iowa at the time the petition was filed. The sole issue is whether the husband had acquired a new domicile of choice in Illinois prior to the time the petition was filed on August 29, 1961.

 The hearing in the district court was conducted as in equity without objection and we will consider it de novo here, without deciding whether a special appearance in an equity matter is to be reviewed as law or equity. Laughlin v. Franc, 247 Iowa 345, 347, 73 N.W.2d 750; Gilbrech v. Kloberdanz, 252 Iowa 509, 515, 107 N.W.2d 574.

 The residence requirement for jurisdiction of a divorce action is that one of the parties be in good faith domiciled in the county where the action is brought. Korsrud v. Korsrud, 242 Iowa 178, 45 N.W.2d 848; Snyder v. Snyder, 240 Iowa 239, 35 N.W.2d 32; Hinds v. Hinds, 1 (Clarke) Iowa 36. The burden is upon the plaintiff who is attempting to assert jurisdiction in the district court to establish facts which sustain his claim of jurisdiction in the District Court of Cerro Gordo County. Mayer v. Wright, 234 Iowa 1158, 1162, 15 N.W.2d 268; Hill v. Electronics Corp. of America, 253 Iowa 581, 590, 113 N.W.2d 313; Gallagher v. Philadelphia Transportation Co., 185 F.2d 543. However, in view of the fact that it is conceded Cerro Gordo County was his domicile, it is presumed to continue until facts have been presented establishing a domicile elsewhere, and the burden is upon the defendant to go forward with the evidence proving a change in plaintiff's domicile. In re Estate of Colton, 129 Iowa 542, 105 N.W. 1008; Nugent v. Bates, 51 Iowa 77, 50 N.W. 76, 33 Am. Rep. 117; Farrow v. Farrow, 162 Iowa 87, 94, 143 N.W. 856; 28 C. J. S. 35, Domicile, section 16.

Plaintiff was assigned by Armour & Company, his employer, to a management training program in Mason City. He and his family acquired a domicile there. In June 1961 the

program was discontinued and plaintiff was notified to report to Chicago July 18, 1961, to work out of the home office. He was not required to move to the Chicago area. The new job would require him to travel all over the country. He and his family left Mason City on a three-week vacation ending up in Los Angeles where his family was to remain until he located a suitable home in the southwest Chicago area. The furniture and household goods were left in the home they had leased in Mason City until August 12 at the suggestion of the landlord who wished to show the house with furniture in place. Plaintiff intended to send for the furniture if a home were located in the Chicago area before August 12.

Plaintiff left his family in Los Angeles and reported to the home office in Chicago July 18, 1961. He lived in motels and the Y. M. C. A. while in Chicago and spent most of his time visiting packing plants around the country. While in Chicago he tried to find a suitable home. He sent pictures of several homes to his wife and even sent a lease, which was never returned.

While plaintiff was in San Francisco on August 21, 1961, on business, he was informed the landlord wanted the furniture and household things removed from the Mason City house. He went to Los Angeles to pick up his wife and family and was served with notice of a separate-maintenance action on August 23. This was the first he knew that his wife did not intend to go to Chicago with him.

He returned to Mason City where he stayed in the leased home until August 29, 1961, at which time the furniture was stored and this divorce action commenced. Since that time he has kept some clothes and records in Mason City either checked at the hotel or in the home of a friend. He has returned to Mason City on several occasions and has done nothing anywhere else which would be inconsistent with a domicile in Mason City since that date. Therefore, the critical period from which we must determine whether plaintiff acquired a new domicile in Illinois is from the time he reported for work July 18, 1961, until he was served with notice August 23, 1961.

Defendant contends that plaintiff intended to abandon Mason City as his domicile and to move his family into the

Chicago area and when he arrived in the Chicago area to report for work July 18, 1961, the intent and his physical presence in the area concurred and he acquired a new domicile.

Plaintiff contends his intention to move to the Chicago area was contingent upon two conditions: (1) the finding of a suitable home in the Chicago area for the family, and (2) the moving of his family and furniture into such home, which conditions were never met. The trial court so held and we agree.

 The change of a person's domicile is considered a serious matter. A domicile once acquired continues until a new one is perfected by the concurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in, the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely. In re Estate of Jones, 192 Iowa 78, 182 N.W. 227, 16 A. L. R. 1286; Harris v. Harris, 205 Iowa 108, 215 N.W. 661; Farrow v. Farrow, 162 Iowa 87, 94, 143 N.W. 856; Barhydt v. Cross, 156 Iowa 271, 136 N.W. 525, 40 L. R. A., N. S., 986, Ann. Cas. 1915C 792; Kennan on Residence and Domicile, page 194, section 92; 28 C. J. S. 30, Domicile, section 13.

 Domicile is largely a matter of intention, which must be freely and voluntarily exercised. 28 C. J. S. 18, Domicile, section 11. The intention to change one's domicile must be a present and fixed intention and not dependent upon the happening of some future or contingent event. 28 C. J. S. 20, Domicile, section 11(e)(4). Because it is essentially a matter of intent, precedents are of slight assistance and the determination of the place of domicile depends upon all the facts and circumstances in each case. In re Estate of Jones, supra; 28 C. J. S. 41, Domicile, section 18.

We have searched the authorities cited by the parties hereto and others developed in our research and have failed to find any which give us much aid in the specific troublesome problem before us. We have found none in which the facts are comparable. If there were any evidence tending to show the plaintiff intended to move to Chicago regardless of what his family did or that the family intended to remain in Mason City until

a home was acquired in the Chicago area, we would have no difficulty in resolving the problem.

The intention of both parties when they left Mason City for their family vacation is clear. They did not intend to make Mason City their home any longer. Defendant and the children were to remain in Los Angeles with her mother while plaintiff went to the Chicago area to locate a suitable home for the family. When such a home was located the family was to come to Chicago and they would resume their family life. This continued to be the plaintiff's intention, as indicated by his admitted efforts to find a home and his transient quarters in Chicago, until he was served with notice of the suit in California. Up until that time he had no thought except that his family would join him in Chicago and their home would be reestablished. We are actually called upon to determine his intent concerning the changing of his own domicile independent of the actions of his family when that possibility had not entered his mind until August 23.

Defendant contends plaintiff's presence in the Chicago area coupled with the intention to make a family home in the Chicago area is sufficient concurrence of the necessary elements hereinabove set out for him to acquire a new domicile. She argues that it is his domicile and not that of the family which is determinative and that it is not necessary for plaintiff to have a fixed abode to acquire a new domicile.

We agree that it is the plaintiff's domicile which is determinative and that he can establish a domicile apart from his family if that is his intention. Schlawig v. De Peyster, 83 Iowa 323, 49 N.W. 843, 13 L. R. A. 785, 32 Am. St. Rep. 308. There is considerable diversity of opinion as to the necessity of a fixed abode in acquiring a new domicile. Kennan on Residence and Domicile, page 215, section 104; 28 C. J. S. 14, Domicile, section 10. However, it appears to be an important factor to be considered in determining the intent. A floater without deep roots at his previous domicile certainly could not be required to obtain a fixed abode in order to change his domicile, but the absence of a fixed abode becomes an important factor in determining the intention of a family man who has

left an established home and is looking for another home for his family. A transient stop in a motel or Y. M. C. A. cannot be considered the normal manner of living for the indefinite future for this type of person.

Plaintiff only thought of making a change in domicile on the basis that his family would accompany him. They have not and apparently will not do so. There is nothing in the record which would tend to indicate he intended to make his home in Chicago by himself. Plaintiff denies that was his intention and all of his actions both before and after discovering his family was not coming to Chicago support this statement.

 It does not seem reasonable or just to hold that a person who has no thoughts of changing his domicile except in the terms of his family, should, because he is looking for such home when his wife decides not to reestablish the home, be held to have intended to change his own individual domicile in spite of the family or his separate desires. The absence of any consideration of such a possibility at anytime prior to the time action was commenced against him negatives the conclusion that he could have had a present and fixed intention to make his own separate home in Chicago.

We hold with the trial court that plaintiff's intention to change his domicile was contingent upon finding a suitable home for his family and moving the family into such home.

See Cass v. Gunnison, 1888, 68 Mich. 147, 36 N.W. 45. —Affirmed.

All JUSTICES concur.