In re the MARRIAGE OF Christina VOGEL and Thomas William Vogel.

Upon the Petition of Christina VOGEL, Appellee,

v.

and Concerning

Thomas William VOGEL, Appellant.

No. 61558.

Supreme Court of Iowa.

Nov. 22, 1978.

Marks, Marks & Marks, Des Moines, for appellant.

Van Werden & Hulse, Adel, for appellee.

Considered by REES, P. J., and UHLEN-HOPP, HARRIS, ALLBEE and LARSON, JJ.

REES, Justice.

This appeal by respondent-husband from the trial court's decree in a dissolution proceeding under chapter 598, The Code, is centered primarily upon respondent's contention that the trial court lacked jurisdiction to enter a decree of dissolution. We agree with the respondent that the trial court lacked jurisdiction reverse and remand this case for the entry of an order dismissing the plaintiff's petition.

The parties, both of whom are native Iowans and graduates of Iowa State University, were married in 1968. The petitioner, Christina, received a Bachelor of Science degree in home economics education, and the respondent, Thomas, a degree in veterinary medicine. Following their marriage, the parties moved to Omaha, and later, in January of 1969, to Waterloo, Iowa, where the first two of their three children were born. Thomas set himself in the practice of veterinary medicine in Waterloo, and in 1974 decided to move to Canada to practice his profession. He flew to Canada, made arrangements to engage in the practice of veterinary medicine and purchased a residence. Christina, then six weeks pregnant with the third child of the parties, went to Canada with Thomas. She later testified she intended to stay only if she could bring some stability to the marriage relationship.

When Christina entered Canada on June 3, 1974 she executed a Canadian Immigration Identification Record. A similar document was executed by Thomas for himself and as head of the family for the children who accompanied the parties.

While the parties were in Canada, they leased their home in Waterloo, with an option to purchase which was later exercised. They also kept bank accounts, stored belongings and paid property taxes in Iowa. Christina returned to Iowa with the three children in March of 1976, and immediately went to Waterloo for approximately one week and thence to Perry, Iowa. She there enrolled the two older children in school and obtained employment teaching in a nearby community. Her petition for dissolution of marriage was filed in the Dallas County court on March 26, 1976. On the same date an order was entered for the issuance of a writ of injunction restraining Thomas from interfering with her or with the children. Thomas was served by mail and published notice of the petition for dissolution of marriage and of the issuance of the temporary injunction.

On June 29 Thomas filed a special appearance for the sole purpose of attacking the jurisdiction of the Dallas County court, in which he represented that § 598.6, The Code, requiring a petitioner to have been a resident of the State of Iowa for at least one year prior to the institution of a suit for dissolution had not been complied with; and that in fact Christina had been a resident of McBride, British Columbia, Canada, since June of 1974, where she resided with her husband and children until her departure therefrom on March 1, 1976, when she returned to Iowa. Said special appearance was overruled by the court, and Thomas made no further appearance and filed no further proceedings. A default decree was entered December 27, 1977, awarding custo-

dy of the children to Christina, and purporting to distribute the property of the parties.

Following the entry of the court's order authorizing the issuance of a writ of injunction to restrain the respondent from interfering with petitioner or the children of the parties, the respondent came to Iowa, took the two older children without the petitioner's knowledge and returned to Canada. He then instituted a guardianship proceeding in Canada to gain legal custody of the children then with him. The petitioner went to Canada and resisted the respondent's application in the guardianship to gain legal custody of the children, appearing at the hearing represented by counsel. The British Columbia court found for the respondent. Later, the petitioner secured an order, in Iowa, granting her custody of the children.

In its ruling, the court found that the court lacked in personam jurisdiction over the respondent. The decree of the Dallas County court granted and confirmed the petitioner's undivided half interest in jointly owned Canadian real estate and livestock. The court also awarded to each party his or her own personal effects and the vehicles in their respective possessions. Christina was awarded half of the proceeds from the sale of the Waterloo property and Thomas was made responsible for all debts of the parties incurred prior to the entry of the decree. The Dallas County court retained jurisdiction of the case to award alimony, attorney fees and child support in the event personal jurisdiction could be obtained over Thomas or in the event property belonging to him could be located within Iowa. Thomas was ordered to pay all transportation costs incident to visitation with the children and to post a surety bond in the sum of $30,000 prior to the exercise of his visitation rights with the children.

The respondent states the following issues for review:

(1) Was the petitioner a resident of Iowa for the year prior to the filing of her petition for dissolution of marriage, and if not, did the court lack jurisdiction to enter a decree of dissolution?

(2) Should the Uniform Child Custody Jurisdiction Act have been applied in this case?

(3) What is the proper scope of relief which may be granted in a dissolution proceeding when there is no in personam jurisdiction over the respondent?

(4) Was the property division provided for in the decree inequitable?

I. The trial court found the petitioner's residence or domicile for purposes of chapter 598, The Code, to have been in Waterloo, Iowa during the period she lived in Canada. The respondent contends this finding is in error and that his challenge to the jurisdiction of the court by special appearance should have been sustained.

When the respondent in an action for dissolution of marriage is not a resident of this state and is not personally served, § 598.6, The Code, requires the petitioner to have been a resident of Iowa for the year preceding the filing of the petition. The trial court found the petitioner to have met this requirement. Our review of the trial court's adjudication concerning respondent's special appearance is not de novo, the finding and conclusion of the trial court having the status of a jury verdict which is binding if supported by substantial evidence, *Morris v. Morris*, 197 N.W.2d 357, 359 (Iowa). We find, after an examination of the record, there was not substantial evidence before the court on which a finding of residence or domicile on the part of Christina could be based.

We have construed the term "residence" to have much the same meaning as the term "domicile", *Korsrud v. Korsrud*, 242 Iowa 178, 45 N.W.2d 848; *Julson v. Julson*, 255 Iowa 301, 122 N.W.2d 329. This was recognized by the United States Supreme Court when it upheld the constitutionality of the residency requirement of the statute, *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 560, 42 L.Ed.2d 532. In *Korsrud, supra*, 45 N.W.2d at 850, we said, "To be a resident within the meaning of these provisions one must have a fixed habitation with no intention of removing therefrom". In

*Julson v. Julson*, at 305 of 255 Iowa, 331 of 122 N.W.2d, we said:

"A domicile once acquired continues until a new one is perfected by the concurrence of three essential elements: (1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely.

" * * * The intention to change one's domicile must be a present and fixed intention and not dependant upon the happening of some future and contingent event".

Central to the ruling of the trial court was a determination that the petitioner did not possess the requisite intent to remain in Canada indefinitely at the time she and respondent entered Canada. On the basis of the petitioner's testimony at the hearing on respondent's special appearance, the trial court found "that she never did in fact intend to accept Canada as her residence or domicile". In its ruling, the court noted that the only record beside petitioner's testimony consisted of affidavits supporting the positions of the parties. The court did not consider Christina's signed Canadian Immigration Identification Record, which was introduced in the hearing on special appearance as respondent's Exhibit A, when it summarized the record made at the hearing. This omission is crucial because the Immigration Record constitutes the only direct evidence of Christina's intent at the relevant time, that of her physical entry into Canada. An analysis of the significance of the Canadian Immigration Identification Record convinces us that the petitioner did possess the intent requisite to a change of domicile.

█ The trial court found that the petitioner and respondent had filed "no declaration of any kind with Canadian authorities that they intended in anyway to become citizens of Canada or intended in anyway to establish a permanent residence in Canada". These findings are controverted by the very existence of the Immigration Record. Examination of Exhibit A, the form referred to, discloses that Christina Vogel was admitted into Canada as an immigrant on June 3, 1974. Section 2 of chapter I–2 of the Revised Statutes of Canada (Vol. IV 19170) defines immigrant as "a person who seeks admission to Canada for permanent residence". The respondent's Exhibit A thus constitutes a signed statement by Christina of intent to become a permanent resident of Canada. The signing of such a document is not to be taken lightly. Failure to truthfully answer an inquiry under the aforementioned statute is punishable by fine, imprisonment or both under § 19 of chapter I–2. Gaining immigrant status, as was accomplished by Christina in completing and signing the Immigration Identification Record, is also a necessary step toward gaining Canadian citizenship, § 4(1), Ch. I–2, R.S.C. The immigrant status must be maintained for five years in order to make final application for Canadian citizenship. At the time, the petitioner and respondent could have taken no further steps toward acquiring such citizenship. When combined with the purchase of a Canadian farm by the parties, on which they cohabited until Christina returned to Iowa, the completion of the Immigration Record by her compels the conclusion that she did possess the requisite intent to effectuate a change in domicile.

The weight to be given the Immigration Record is further enhanced by its temporal setting. The document relates directly to the time at which Christina's intent is at issue, the time of removal to and presence at the alleged domicile. All other evidence on which the trial court relied was retrospective and indirect, based largely on recollection and thus subject to distortion, whether intentional or not. The signing of the document occurred at the time of removal and constitutes direct evidence of Christina's intent at that time.

█ In light of the legal significance of the Canadian Immigration Record, the duration of the parties' sojourn in Canada, their purchase of a Canadian farm, and the affidavits submitted by the respondent, we

must conclude that the trial court erred in overruling respondent's special appearance and finding Christina to have been a resident of the state for purposes of ch. 598, The Code. While Christina did submit affidavits and did testify regarding her intent, such evidence does not constitute substantial evidence when weighed against the record, also including affidavits, made by the respondent, particularly the petitioner's Immigration Identification Record. We therefore hold that the district court was without jurisdiction to entertain Christina's petition for dissolution due to her failure to meet the residence requirement of § 598.6, The Code. Consequently, we reverse the trial court and remand this case for the entry of an order dismissing the petition.

II. Due to the disposition of this appeal on the jurisdictional question, it is unnecessary for us to address the remaining issues. It may be noted a defaulting respondent may still seek appellate review of a dissolution decree, but "our de novo review will generally be limited to (1) scope of relief granted, and (2) equities of the decree as determined by an examination of the entire record made at trial". *In re Marriage of Huston*, 263 N.W.2d 697 (Iowa). Therefore, error was not preserved regarding the second issue stated for review, and it could not be determined regardless of the outcome of the jurisdictional issue.

It appears likely that Christina will petition for dissolution upon the dismissal of her present petition, and that the disposition of property, both the marital property and that of the respondent, will again be at issue. We wish to call the attention of the parties to the decision of the United States Supreme Court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683, in which the Court equated the standards applicable to assertions of quasi in rem and in personam jurisdiction, concluding "that all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny", 433 U.S. at 212, 97 S.Ct. at 2584–2585, 53 L.Ed.2d at 703. See D. Vernon, State Court Jurisdiction: a Preliminary Inquiry into the Impact of *Shaffer v. Heitner*, 63 Iowa Law Review 997 (1978). As indicated in *Shaffer*, all assertions of state court jurisdiction are subject to the "minimum contacts" and fairness tests of *International Shoe* [*International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95], and subsequent cases.

This case is, therefore, reversed and remanded for the entry of an order dismissing the plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

A domicile, once acquired, is retained until supplanted by acquisition of a new one. *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 270–271 (Iowa 1973). In *Edmundson* we approved the following quote from 25 Am.Jur.2d, Domicile, § 24, p. 19:

"The requisite element of intent to change one's domicile necessarily includes an intention to abandon the former domicile, *and to do so permanently. There must be both an absence of an intent to return and an intent to remain in the place chosen as the new domicile.* To effect a change of domicile, there must be the intent to exchange the prior domicile for another. *If a person establishes a new dwelling place, but never abandons the intention* of returning to the old dwelling place as his only home, the domicile *remains at the old dwelling place.*" (Emphasis in *Edmundson*.)

The majority concedes our review is not de novo and that the finding of the trial court is binding on us if it is supported by substantial evidence. *Morris v. Morris*, 197 N.W.2d 357, 359 (Iowa 1972).

I think Christina's testimony is substantial evidence, sufficient to support the trial court's ruling. The majority seems to hold that the Canadian Immigration Identification Record destroys Christina's testimony of her subjective intention. But under our

scope of review it seems to me that her testimony persists. She may well have retained a subjective intent that her sojourn in Canada would be tentative and revocable. Her desperate desire to preserve the marriage could explain her willingness to sign the required papers and move to Canada without the necessary intent that the move was to be permanent.

It is not enough for us to disagree with the determination of the trial court. It is for us only to determine whether, on the record, the trial court could find as it did.

I would affirm.